Approved: _____
ELIZABETH A. ESPINOSA
Assistant United States Attorney

Before:   HONORABLE GABRIEL W. GORENSTEIN
          United States Magistrate Judge
          Southern District of New York

**21 MAG 4589**

- - - - - - - - - - - - - - - - X
                                 :   SEALED COMPLAINT
UNITED STATES OF AMERICA         :
                                 :   Violations of 21 U.S.C.
     - v. -                      :   § 846, 18 U.S.C.
                                 :   § 924(c)
ROBERT PRUDEN,                   :
   a/k/a "Jordan," and           :   COUNTY OF OFFENSE:
STEVEN SYLVESTER,                :   NEW YORK
   a/k/a "Little,"               :
                                 :
     Defendants.                 :
- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

KEVIN KUNTZ, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE

1.  From at least in or about July 2020 up to and including at least in or about April 2021, in the Southern District of New York and elsewhere, ROBERT PRUDEN, a/k/a "Jordan," and STEVEN SYLVESTER, a/k/a "Little," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.  It was a part and an object of the conspiracy that ROBERT PRUDEN, a/k/a "Jordan," and STEVEN SYLVESTER, a/k/a "Little," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3.  The controlled substance involved in the offense was 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Firearm Use, Carrying, Possession)

4.  On or about April 21, 2021, ROBERT PRUDEN, a/k/a "Jordan," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

5.  I am a Special Agent with HSI.  I have been personally involved in the investigation of this matter.  This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals.  Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.  Since in or about July 2020, HSI and the New York City Police Department ("NYPD") have been investigating various individuals selling narcotics in the vicinity of 9th Avenue and W 40th Street and W 42nd Street in Manhattan, New York.  Based on my participation in this investigation and my conversations with an undercover officer ("UC-1"), I have learned, among other things, the following:

   a. On or about August 25, 2020, UC-1 was in the vicinity of 9th Avenue between W 41st Street and W 42nd Street in Manhattan, New York and approached an individual subsequently identified as STEVEN SYLVESTER, a/k/a "Little," the defendant.

2

SYVESTER and UC-1 had a narcotics-related conversation and UC-1 asked SYLVESTER in sum and substance if he had "hard," which, based on my training and experience, is a street name for crack cocaine. SYLVESTER indicated that he had crack cocaine and sold UC-1 approximately seven zips containing a substance that appeared to be crack cocaine in exchange for approximately $40 of United States currency. SYLVESTER also provided UC-1 with a particular cellphone number ending in 1363 (the "1363 Number") and told UC-1 in sum and substance to call him if UC-1 ever needed anything else. UC-1 understood SYLVESTER to be offering to sell crack cocaine to UC-1 in the future. Law enforcement agents conducted a field test and the substance tested positive for cocaine. A law enforcement lab tested the substance purchased from SYLVESTER, which contained a total of approximately 0.307 grams of a substance that tested positive for cocaine.[1]

b. On or about August 26, 2020, UC-1 called SYLVESTER on the 1363 Number and asked in sum and substance if he was available to sell UC-1 crack cocaine. SYLVESTER said in sum and substance that he was not available but that his friend was. UC-1 told SYLVESTER in sum and substance that UC-1 wanted to purchase $40 of crack cocaine. SYLVESTER responded in sum and substance, "I got you, go see my boy." UC-1 understood this to mean that SYLVESTER's associate could sell UC-1 crack cocaine. UC-1 went to the vicinity of 9th Avenue and W 42nd Street, in Manhattan, New York, where UC-1 met an individual subsequently identified as ROBERT PRUDEN, a/k/a "Jordan," the defendant. PRUDEN gave UC-1 approximately five zips containing a substance that appeared to be crack cocaine in exchange for approximately $40 of United States currency. PRUDEN gave UC-1 a particular cellphone number ending in 1290 (the "1290 Number") to arrange future narcotics transactions. A law enforcement lab tested the substance purchased from PRUDEN, which contained a total of approximately 0.232 grams of a substance that tested positive for cocaine.[2]

---

[1] Unless otherwise instructed, the NYPD laboratory tests for cocaine but does not test for cocaine base. Based on my training and experience, UC-1's request for "hard," and the price that UC-1 paid for the substance, there is probable cause to believe that UC-1 purchased crack cocaine from SYLVESTER. The substance will be retested for cocaine base.

[2] As with the substance described in footnote 1 above, this substance was not tested for cocaine base. Based on my training and experience, UC-1's request, and the price that UC-1 paid for the substance, there is probable cause to believe that UC-1

    c. On or about September 24, 2020, UC-1 called PRUDEN on the 1290 Number and asked PRUDEN in sum and substance if he had any crack cocaine for sale. PRUDEN said that he did and directed UC-1 to meet PRUDEN at Broadway and W 52nd Street in Manhattan, New York. PRUDEN provided UC-1 with approximately 12 zips containing crack cocaine in exchange for approximately $100 in United States currency. A law enforcement lab tested the substance purchased from PRUDEN, which contained a total of approximately 0.574 grams of a substance that tested positive for cocaine base.

    d. On or about October 14, 2020, UC-1 called SYLVESTER on the 1363 Number and asked SYLVESTER in sum and substance if UC-1 could purchase an 8-ball of crack cocaine, which based on my training and experience is approximately one eighth of an ounce. SYLVESTER agreed to sell the crack cocaine to UC-1 and told UC-1 in sum and substance to meet him at the corner of 9th Avenue and W 42nd Street in Manhattan, New York. Once UC-1 reached that location, UC-1 called SYLVESTER on the 1363 Number and asked SYLVESTER where he was. SYLVESTER told UC-1 in sum and substance to walk down to 9th Avenue and W 40th Street. When UC-1 arrived at that location, SYLVESTER provided UC-1 with approximately one twist containing a substance that appeared to be crack cocaine and approximately three zips containing a substance that appeared to be marijuana. SYLVESTER told UC-1 in sum and substance, "I gave you extra bud to try." UC-1 understood SYLVESTER to be providing UC-1 with a sample of marijuana. A law enforcement lab tested the substance purchased from SYLVESTER, which contained a total of approximately 1.421 grams of a substance that tested positive for cocaine.[3]

    e. On or about January 13, 2021, UC-1 texted PRUDEN on the 1290 Number and asked PRUDEN in sum and substance how much he would charge for 10 grams of crack cocaine. PRUDEN responded to UC-1 from the 1290 Number and said in sum and substance that he would sell UC-1 10 grams of crack cocaine for $500. PRUDEN told UC-1 in sum and substance to go to a hotel in

---

purchased crack cocaine from PRUDEN. The substance will be retested for cocaine base.

[3] As with the substance described in footnotes 1 and 2 above, this substance was not tested for cocaine base. Based on my training and experience, UC-1's request, and the price that UC-1 paid for the substance, there is probable cause to believe that UC-1 purchased crack cocaine from SYLVESTER. The substance will be retested for cocaine base.

the vicinity of 330 W 40th Street in Manhattan, New York ("Hotel-1"). When UC-1 arrived at Hotel-1, UC-1 texted PRUDEN on the 1290 Number and told PRUDEN in sum and substance that UC-1 was outside Hotel-1. PRUDEN responded from the 1290 Number in sum and substance that he was getting a haircut but his girlfriend ("Individual-1") was on her way downstairs. Individual-1 met UC-1 outside of Hotel-1 and handed UC-1 a plastic bottle containing a substance that appeared to be crack cocaine in exchange for $500 of United States currency. A law enforcement lab tested the substance purchased from PRUDEN, which contained a total of approximately 9.786 grams of a substance that tested positive for cocaine base.

       f. On or about January 21, 2021, UC-1 contacted PRUDEN on the 1290 Number and asked PRUDEN in sum and substance for 10 grams of crack cocaine. PRUDEN responded in sum and substance, "I'm ready for you." UC-1 told PRUDEN that UC-1 would meet him outside Hotel-1. When UC-1 arrived at Hotel-1, UC-1 texted PRUDEN on the 1290 Number to tell him that UC-1 had arrived. PRUDEN came out of Hotel-1 and gave UC-1 a large zip containing a substance that appeared to be crack cocaine in exchange for $500 in United States currency. A law enforcement lab tested the substance purchased from PRUDEN, which contained a total of approximately 9.47 grams of a substance that tested positive for cocaine base.

       g. On or about April 8, 2021, a second undercover officer ("UC-2") called PRUDEN on the 1290 Number and arranged to purchase approximately 20 grams of crack cocaine from PURDEN. UC-2 arrived outside Hotel-1 in a car and PRUDEN got into the front passenger seat. PRUDEN handed UC-2 a clear twist bag containing a substance that appeared to be crack cocaine in exchange for approximately $1,000 in United States currency. A law enforcement lab tested the substance purchased from PRUDEN, which contained a total of approximately 19.739 grams of a substance that tested positive for cocaine base.

       h. UC-1 and UC-2 purchased crack cocaine from PRUDEN on multiple other occasions. An NYPD laboratory determined that the aggregate weight of the cocaine base that UC-1 and UC-2 purchased from PRUDEN and SYLVESTER was at least approximately 100 grams.

    7. Based on my participation in this investigation, including my review of law enforcement records and reports, my communications with other law enforcement agents, and records

provided by Hotel-1, I have learned the following, in substance and in part:

    a. ROBERT PRUDEN, a/k/a "Jordan," the defendant, rented room 506 in Hotel-1 (the "Hotel Room") from on or about January 5, 2021, through on or about April 21, 2021.

    b. On or about April 21, 2021, New York State Parole ("Parole") received a tip from an individual ("Individual-2")[4] who stated that PRUDEN had drugs in the Hotel Room. PRUDEN was on parole for a 2018 conviction in New York State Court for Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Code Section 220.16. One of PRUDEN's conditions of parole allowed parole officers to search PRUDEN's residence if officers had reasonable suspicion to believe that evidence of a crime may be in PRUDEN's residence.

    c. On or about April 21, 2021, following the tip from Individual-2, Parole officers (the "Parole Officers") went to the Hotel where they encountered PRUDEN in the hallway outside the Hotel Room. The Parole Officers conducted a pat down search of PRUDEN and found narcotics on his person. The Parole Officers asked PRUDEN if he had a firearm in the Hotel Room and PRUDEN said, in sum and substance, that he had a firearm under the mattress in the Hotel Room. The Parole Officers handcuffed PRUDEN. The Parole Officers called NYPD to the scene and NYPD officers (the "NYPD Officers") entered the Hotel Room at Parole's direction, where they found a quantity of narcotics that appeared to be crack cocaine in plain view on the floor of the Hotel Room. The NYPD Officers saw stacks of United States currency inside the open safe in the Hotel Room. The NYPD Officers also recovered a firearm under the mattress in the Hotel Room. At the direction of Parole, the NYPD Officers seized the crack cocaine, the United States currency, and the firearm from the Hotel Room.

    d. Based on my conversations with NYPD officers, PRUDEN was placed under arrest by the NYPD Officers and transported to an NYPD precinct for processing. At the NYPD precinct, PRUDEN was advised of his Miranda rights and he agreed to waive his rights and speak to law enforcement. After he waived his rights, PRUDEN told law enforcement officers, in sum

---

[4] Individual-2 is not known to law enforcement but claimed to have a personal relationship with PRUDEN.

6

and substance, that the narcotics and the firearm recovered at the Hotel Room belonged to PRUDEN.

    WHEREFORE, I respectfully request that a warrant be issued for the arrest of ROBERT PRUDEN, a/k/a "Jordan," and STEVEN SYLVESTER, a/k/a "Little," the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

/s/ sworn telephonically
_____
Special Agent Kevin Kuntz
Department of Homeland Security,
Homeland Security Investigations

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure,
This 28th day of April, 2021.

_____
THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York